**Unitepd States District Court**
**District of Massachusetts**

| | |
|---|---|
| Val Kay, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   **Civil Action No.** |
| Deb Frodl et al., | )   **22-10977-NMG** |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Val Kay ("Kay" or "plaintiff") brought a shareholder derivative action, on behalf on XL Fleet Corp. ("Company") against current and former directors and officers ("defendants") of the Company and Pivotal Investment Corporation II ("Pivotal"). After a comprehensive settlement of the case, she now seeks approval of attorneys' fees which defendant opposes (Docket No. 76).

**I.   Background**

XL Hybrids is a Delaware corporation founded in 2009, which provides electrification solutions for light and medium commercial vehicles in North America. In 2020, XL Hybrids entered into a merger agreement with the special purpose acquisition company ("SPAC") Pivotal. The resulting company was renamed XL Fleet Corp. ("the Company").

-1-

Plaintiff, a shareholder of the Company, contends that the individual defendants induced Pivotal shareholders to approve the merger with XL Hybrids through a series of false and misleading statements about the Company's pipeline figures, supply chain problems, active and returning customers and ability to provide the purported technological benefit.  As a result of those alleged omissions and misrepresentations, defendant's assessment of the Company's prospects and future revenue projections was overstated.

In December, 2020, the merger was completed.  Thereafter, defendants purportedly issued a series of false or misleading press releases concerning adverse material facts about the Company's revenue forecasts, logistics and the due diligence conducted by the defendants prior to the merger's completion. In 2021, a report was published by Muddy Waters, a due diligence research company, which detailed the alleged misrepresentations and the actual condition of the Company.  As a result of the report, the stock price of the Company declined significantly.

In June, 2022, plaintiff filed a verified stockholder derivative complaint in this Court against defendants asserting violation of the Exchange Act and claims against the individual defendants for breach of fiduciary duty and abuse of corporate assts among other things.  In January, 2023 the parties filed and received approval of a joint stipulation to stay this action

until the conclusion of discovery in the related Federal Securities Action.  In March, 2024, the parties reached a settlement and moved for preliminary approval which the Court allowed.

Under the terms of the proposed settlement, the Company's Board of Directors will address the core wrongdoing addressed in this action and strengthen the Company's governance by adopting immediate reforms which include, but are not limited to: (1) improvements to the Audit and Compensation Committees; (2) recoupment of certain incentive-based and performance-based compensation wrongfully paid to Company officers upon determination of serious misconduct; (3) creation of an Investment Committee; and (4) appointment of an additional independent director.  The reforms are to remain in effect for four years.

In addition to moving for approval of the settlement, counsel for plaintiff moved for attorney's fees in the amount of $2,500,000.  Defendants oppose the motion for fees and counter that no more than $200,000 in fees should be awarded.

In early August, 2024, the Court approved the settlement, and heard oral argument on the attorneys' fees matter and took the latter under advisement.

II.  **Motion for Attorneys' Fees**

In deciding a motion for an award of attorney's fees, the Court may consider the following factors: 1) the benefits achieved in the action, 2) the presence or absence of substantial objections, 3) counsel's skill, standing and ability, 4) the complexities of the litigation, 5) the financial risks of non-payment 5) the time devoted by counsel 6) and the awards made in similar cases. See, e.g., Ford v. Takeda Pharmaceuticals U.S.A., Inc., 2023 WL 3679031, at * 1 (D. Mass. Mar. 31, 2023).

### A. Benefits of the Reforms

The settlement in this case includes several reforms including, inter alia, creation of a new independent director to serve on the Board, empowering the Audit Committee to monitor internal risk and public reporting compliance, retention of an independent consultant for compensation related matters, the formalization of the Investment Committee and appointment of a lead independent director in the event that the Chair of the Board and CEO are the same person.

Plaintiff contends that each reform confers substantial benefit on the Company and justifies the award of substantial attorneys' fees.  The settlement also commits the Company to adopt and maintain the reforms for at least four years, a time frame which plaintiff contends will ensure their endurance.

Defendants respond that the reforms were not nearly as significant as plaintiff suggests.  Specifically, as to the independent director, defendants insist that the Company had already appointed a new independent director before the settlement and that, furthermore the Board was already a majority independent.

At oral argument, plaintiff clarified that, while a majority of directors prior to the settlement were "independent" as defined by the New York Stock Exchange guidelines, the Board was not majority independent in practical terms because three of the six directors were allegedly involved with the purported misrepresentations at the heart of the derivative action.  The Court agrees that to the extent several of the reforms are redundant of preexisting conditions at the Company, the formalization of good governance practices is essential to maintaining compliance with the security laws on a permanent basis.

### B. Comparable Cases

The Court also considers comparable cases when determining an appropriate award.  Plaintiff cites cases in which courts have awarded substantial attorneys' fees where the appointment of an independent director was the primary benefit achieved by the litigation.  See, e.g., Hollywood Firefighters' Pension Fund v. Malone, 2021 WL 5179219 (Del. Ch. Nov. 8, 2021).  She also

cites purportedly similar derivative actions that were settled
at the pleading stage and resulted in awards of attorneys' fees
in excess of $3,500,000.  See In re CoreCivic, Inc. S'holder
Derivative Litig., No. 3:16-CV-03040 (M.D. Tenn. Dec. 2, 2022).

Defendants rejoin that other cases cited by plaintiff are
distinguishable because 1) most of the attorneys' fees awarded
were negotiated and agreed-to by all parties and 2) the
settlements included both significant monetary payments and
governance reforms.  The Court agrees with defendant and finds
that most of the cases cited by plaintiff are distinguishable
from the case at bar.

Furthermore, plaintiff does not adequately take into
account the lodestar calculations in the allegedly analogous
cases.  For instance, in In re Southern Co. S'holder Derivative
Litig., 2022 WL 4545614 (N.D. Ga. 2022), the settlement included
only corporate governance reforms and the parties had agreed to
a fee award of $4.16M, which represented a lodestar multiplier
of 0.84.

### C. Complexity

The parties dispute the degree of complexity involved in
the litigation.  Defendant contends that plaintiff primarily
"piggybacked" off the related securities litigation.  At oral
argument, plaintiff asserted that all the related litigation

concerning XL Fleet stemmed from the same Muddy Waters report on misrepresentations by the Company.

The Court also acknowledges defendant's contention that the litigation in this case did not reach dispositive motions or discovery.  <u>See In re Oclaro, Inc. Derivative Litig.</u>, No. C-11-3176 EMC, 2014 WL 4684993, at *6 (reducing fees where plaintiffs "essentially piggybacked" on related securities class actions).  Unlike some of the cases cited by defendant, however, this case was not settled immediately and the Court gives credence to plaintiff's effort to facilitate a global resolution.

### D. Quality of Representation and Risk of Non-payment

Plaintiff contends that counsel provided high caliber representation and pursued the action on a fully contingent basis, without any assurance of receiving any fees or reimbursement for their out-of-pocket expenses.  While there is nothing unusual about plaintiff's counsel taking cases such as this one on a contingency basis, the Court acknowledges that fact in plaintiff's favor.

### E. Hours Expended and Lodestar

Plaintiff explains that

in the First Circuit, a lodestar calculation is not
required.  Nonetheless, one may be performed as a
cross-check to ensure that the [fee] award is fair and
reasonable.

Ford, 2023 WL 3679031, at *2 (citing In re Thirteen Appeals
Arising out of the San Juan Dupont Plana Hotel Fire Litig., 56
F.3d 296, 307 (1st Cir. 1995)).  Not including litigation
expenses, which this Court has already allowed, plaintiff has
calculated her lodestar fee at just under $1 million.

Plaintiff contends that a multiplier of approximately 2.5
is reasonable, given the substantial benefits received and the
range of multipliers approved in other security and stockholder
derivative actions.

Defendants reply that the mean multiplier in other follow-
on derivative suits is around 0.94.  The related Securities
Class Action, which was initiated prior to this stockholder
derivative actions, used a multiplier of 1.33 and imposed a
larger risk on counsel.

**F. Conclusion**

An analysis of the factors above demonstrates that both
parties make persuasive arguments in different respects.
Defendant understates the impact of the independent director and
plaintiff overstates the comparability of the cases she cites as
analogous.  The appropriate award is in between the divergent
poles suggested by the parties.  The lodestar is a helpful
indicator as to the reasonableness of the request and the Court
is convinced that a multiplier of 1 is suitable in this case
which did result in substantial reforms but also was resolved

without resort to dispositive motions and with the assistance of
other litigation.  The 1.33 lodestar multiplier awarded in the
related Securities Class Action is similarly instructive.  The
Court will award plaintiff, $1,000,000 in attorneys' fees, i.e.
his approximate lodestar with no upward or downward multiplier.

**ORDER**

For the foregoing reasons, the motion of plaintiff, Val
Kay, for attorneys' fees (Docket No. 76) is **ALLOWED**, in part,
and **DENIED**, in part.  Plaintiff is awarded attorneys' fees in
the amount of One Million Dollars ($1,000,000).

**So ordered.**


 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge


Dated:  August 14, 2024